UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ITS NATIONAL, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>INFINITY CARGO CORP.,<br><br>   Defendant.<br><br>v.<br><br>Mathew Transport LLC d/b/a Zoeva Logistics,<br><br>   Proposed Intervenor-Defendant. | Civil Action No. 22-6624 (JXN)<br><br>OPINION |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff ITS National, LLC ("ITS" or "Plaintiff") to transfer this matter to the United States District Court for the District of Nevada, Reno Division, or, alternatively, to dismiss Defendant Infinity Cargo Corp.'s ("Infinity" or "Defendant") Counterclaim due to improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). [Dkt. No. 24]. Defendant Infinity and proposed Intervenor-Defendant Mathew Transport LLC d/b/a Zoeva Logistics ("Zoeva") oppose Plaintiff's motion. [Dkt. No. 27].[1] The Honorable Julien X. Neals, U.S.D.J., referred the motion to transfer to the Undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), which authorizes a magistrate judge to "hear and determine any pretrial matter

---

[1] On December 23, 2022, one day after Plaintiff filed the instant motion to transfer, Zoeva filed a motion to intervene. [Dkt. No. 25]. Because the Court will grant Plaintiff's motion to transfer and direct that this matter be transferred to the United States District Court for the District of Nevada, Reno Division, the Court declines to consider Zoeva's motion to intervene as that motion should be addressed by the District of Nevada. Accordingly, Zoeva's motion to intervene [Dkt. No. 25] is **administratively terminated** pending reinstatement upon transfer.

1

before the court," with certain inapplicable exceptions. The Court has reviewed all written submissions in support of and in opposition to the motion, and considers the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion to transfer [Dkt. No. 24] is **GRANTED** and the Court accordingly transfers this action to the District of Nevada, Reno Division pursuant to 28 U.S.C. § 1412.

I. BACKGROUND

On November 15, 2022, Plaintiff initiated this action by filing both a complaint as well as an emergency motion for preliminary injunction and an application for order to show cause. Dkt. Nos. 1 and 3. In its complaint, ITS states that "[o]n or about March 29, 2022, ITS, as broker, entered into a Carrier Transportation Contract (the 'Contract') with Infinity, as carrier," and that Infinity is "unlawfully holding cargo and containers belonging to ITS or its customer(s)." Dkt. No. 1 at ¶¶ 5, 9. Plaintiff asserts the following five counts: (1) breach of written contracts; (2) conversion; (3) replevin; (4) declaratory judgment; and (5) attorney fees. Dkt. No. 1.

ITS acknowledged in its complaint that "Paragraph 32 of the Contract provides that venue for any legal action arising under the Contract shall be in Washoe County, Nevada," *id.* at ¶ 6, but argued that "[w]hile Washoe County, Nevada is the proper venue for this action, Defendant's actions of improperly withholding the personal property of third parties and containers in its yard in Newark, New Jersey has required Plaintiff to file the instant action in New Jersey to seek the immediate release of the property." *Id.* at ¶ 7. Plaintiff further stated in the complaint that "[u]pon release of the subject containers [pursuant to Plaintiff's application for order to show cause], Plaintiff will request that this Court transfer the entire matter to the United States District Court, District of Nevada (Reno)" and that "[u]pon transfer, the parties can properly litigate the pending

monetary damages claims in . . . Nevada pursuant to the requirements of Paragraph 32 of the Contract." *Id.* at ¶ 7 n.1.

On December 1, 2022, the Court issued a Text Order scheduling a hearing on the Order to Show Cause for December 12, 2022 [Dkt. No. 8] and on December 7, 2022, Defendant Infinity filed a Response in Opposition to the Order to Show Cause. Dkt. No. 14. On December 12, 2022, the day the Order to Show Cause hearing was scheduled to take place, Plaintiff filed a letter advising "that the parties have settled the Order to Show Cause and the hearing is cancelled without prejudice." Dkt. No. 20.

On December 19, 2022, Infinity filed an Answer to the Complaint and a Counterclaim alleging, among other things, that ITS has failed and refused to pay the monies due and owing a number of companies who have contracted with ITS as a broker for supplies to be shipped/transported. *See* Dkt. No. 21 at 8-14.

On December 22, 2022, Plaintiff filed the instant motion to transfer the case to the District of Nevada, Reno Division, or, in the alternative, to dismiss Defendant Infinity's counterclaim pursuant to Fed. R. Civ. P. 12(b)(3). Dkt. No. 24. The following day, on December 23, 2022, Zoeva filed a motion to intervene, asserting it "has an interest relating to the monies due and owing that are the subject of the action." Dkt. No. 25-1 at 1. On January 3, 2023, Infinity and Zoeva filed a joint brief in opposition to Plaintiff's motion to transfer, arguing that venue is proper in the District of New Jersey for the following reasons: (1) Zoeva, the proposed intervenor, is neither a party to the Contract nor is subject to the jurisdictional clause, and as such, it is unreasonable under the circumstances to enforce same upon Zoeva; (2) Plaintiff availed itself of the jurisdiction of this Court, and a transfer would be prejudicial to Defendant and Zoeva; and (3) jurisdiction should

3

remain in New Jersey in the interests of judicial economy and the public policy of this State. Dkt. No. 27 at 2.

## II.   DISCUSSION

Pursuant to Section 1404, a court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The Court has broad discretion in making determinations under Section 1404(a), and convenience and fairness are considered on a case-by-case basis. *Commodity Futures Trading Comm'n v. Perkins*, No. 06-4674, 2007 WL 2122029, at *3 (D.N.J. July 18, 2007).

Section 1404 requires a two-pronged analysis. The threshold inquiry is whether the proposed transferee forum is one in which the plaintiff could have originally brought suit. *Jumara*, 55 F.3d at 878. In the present case, Plaintiff asserts venue is proper in the District of Nevada, Reno Division, pursuant to the mandatory forum selection clause in the Contract. As stated previously, Infinity and Zoeva assert enforcement of the forum selection clause should be denied for the following reasons: (1) Zoeva, the proposed intervenor, is neither a party to the Contract nor is subject to the jurisdictional clause, and as such, it is unreasonable under the circumstances to enforce same upon Zoeva; (2) Plaintiff availed itself of the jurisdiction of this Court, and a transfer would be prejudicial to Defendant and Zoeva; and (3) jurisdiction should remain in New Jersey in the interests of judicial economy and the public policy of this State. Dkt. No. 27 at 2.

A forum selection clause is *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The Supreme Court intended this to be a strict standard in favor of enforcement, as shown by the Court's admonition in *The Bremen* that enforcement may be denied only where it would be "*seriously* inconvenient," 407 U.S. at 16, such that the resisting party "would be effectively deprived of its day in court." *Id.* at 18.; *see also Gen. Eng'g Corp.*, 783 F.2d at 356. Further, the Third Circuit has explicitly stated that:

> [A] forum selection clause is presumptively valid and will be enforced . . . unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in ligation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

Here, the Court finds that venue would be proper in the District of Nevada, Reno Division. Plaintiff persuasively rebuts Infinity and Zoeva's argument that Zoeva is not a party to the Contract and therefore not subject to its forum selection clause by pointing out that Zoeva also entered into an agreement with ITS that contains the identical forum selection clause. *See* Dkt. No. 29 at 5-6. Additionally, there is no indication in any of the parties' papers that the forum selection clause was the result of fraud or overreaching or that the contracts between Plaintiff and Infinity and between Plaintiff and Zoeva are invalid; indeed, Infinity and Zoeva seek to enforce the terms of the contracts by bringing breach of contract counterclaims against Plaintiff.

Further, the Court is not persuaded that enforcement of the forum selection clause would violate a strong public policy of this forum. Zoeva and Infinity argue that "[w]hile the Motion to Intervene remains pending, enforcement of the forum selection clause would violate the strong

5

public policy as expressed in the entire controversy doctrine, requiring that all parties to an action raise all transactionally related claims in the same action." Dkt. No. 27 at 8. The Court finds this argument unpersuasive, as there have been no substantive decisions rendered in this matter, discovery has not yet commenced, and the Court is administratively terminating Zoeva's motion to intervene pending reinstatement upon transfer to the District of Nevada. There is also no indication that enforcement of the forum selection clause would result in ligation in a jurisdiction so seriously inconvenient as to be unreasonable. Therefore, the Court finds that the factors under *General Engineering Corp.* and *Coastal Steel Corp.* are satisfied, and that venue would be proper in the District of Nevada, Reno Division pursuant to the parties' forum selection clause.

Next, this Court must consider whether transfer would be in the interest of justice and for the convenience of the parties and witnesses. *See* 28 U.S.C. § 1404(a). "In an ordinary case, 'the burden of establishing the need for transfer . . . rests with the movant. But '[w]here the forum selection clause is valid, the [non-moving parties] bear the burden of demonstrating why they should not be bound by their contractual choice of forum.'" *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 567 (D.N.J. 2000) (quoting *Jumara*, 55 F.3d at 879-80). Hence, the burden rests with Infinity and Zoeva.

The Third Circuit has enumerated a number of private and public factors to be weighed when deciding a motion to transfer venue under § 1404(a). The private interest factors incorporate the preferences of the parties in the context of the litigation and include: (1) the choice of forum of the plaintiff; (2) the defendant's preference; (3) the convenience of the parties; (4) the convenience of the witnesses—only to the extent that a witness may actually be unavailable for trial in one of the fora; and (5) where the claim arose. *See Jumara*, 55 F.3d at 879. The second category analyzes the public interest including (1) practical considerations which could make the

litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora. *Mendoza v. U.S. Custom & Border Prot.*, No. 05-6017, 2007 WL 842011, at *3 (D.N.J. Mar. 19, 2007) (citing *Jumara*, 55 F.3d at 879).

### A. Private Factors

"In most cases, the plaintiff's forum choice is a 'paramount consideration in any determination of a transfer request.'" *Cadapult Graphic*, 98 F. Supp. 2d at 567 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). "A forum-selection clause, however, trumps this consideration." *Id.* (citing *Jumara*, 55 F.3d at 880). Here, while Plaintiff filed the Complaint in the District of New Jersey, Plaintiff explained in its Complaint that the proper venue was in the District of Nevada but that Plaintiff was required to file the instant action in New Jersey to seek the immediate release of property which was "improperly withh[eld]." Dkt. No. 1 at ¶ 7. Plaintiff further stated in its Complaint that "[u]pon release of the subject containers, Plaintiff will request that this Court transfer the entire matter to the . . . District of Nevada." *Id.* at ¶ 7 n.1. Accordingly, the Court finds that Plaintiff's forum choice is the District of Nevada in accordance with the Contract despite Plaintiff initially filing the action in this Court. As discussed below, Defendants have not shown the remaining private interest factors tip strongly in favor of this forum such that Plaintiff's forum preference should be disturbed.

With respect to Defendants' most persuasive argument, the Court does not find that the considerations of where a substantial part of the "claims arose" favor either forum since both fora have ties to the facts at issue in this case. *See Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008). While Infinity and Zoeva assert they "do not have any contacts or connections with the State of Nevada," Plaintiff ITS is headquartered in Nevada and both Infinity

7

and Zoeva entered into contracts with ITS agreeing to litigate any disputes in the District of Nevada. Accordingly, the Court does not find that the considerations of where a substantial part of the "claims arose" so strongly favor the instant forum as to counter the strong interest in enforcing the forum selection clause since both fora have ties to the facts at issue in this case.

Similarly, the Court finds that the factors concerning the location of witnesses and documents have little bearing. The Court should only consider these factors where "the witnesses may actually be unavailable" or where the documents may "not be produced in the other forum." *Jumara,* 55 F.3d at 879. Neither party has demonstrated the lack of availability of witnesses or documents. Further, the Court finds that the parties seem capable and have the means to litigate in either forum.

In light of the foregoing, the Court finds that the private factors do not outweigh the strong interest in enforcing the forum selection clause.

**B. Public Factors**

For similar reasons, the Court finds that the public interest factors do not outweigh the strong interest in enforcing the forum selection clause. In addressing the public interest factors, the Court considers: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara,* 55 F.3d at 879 (citations omitted).

First, Infinity and Zoeva do not expressly address whether the judgment could be enforced in Nevada, and there has been no evidence produced to suggest that that forum cannot also litigate the New Jersey state law counterclaims brought by Infinity and anticipated to be brought by Zoeva.

*See Yocham*, 565 F. Supp. 2d at 559. The next factor—practical considerations for an easy, expeditious, or inexpensive trial—is also non-determinative. Because this case is at an early stage, practical considerations do not warrant its retention in this district. The Court is confident that the District of Nevada can adjudicate this matter as efficiently as the District of New Jersey.

As to the next factor, the Court finds that both fora have an interest in deciding this case. Nevada has an interest in regulating the conduct of its corporations, while New Jersey has an interest in protecting its corporations. Likewise, with respect to the familiarity of the trial judge with the applicable state law in diversity cases, federal district courts are often called upon to interpret the laws of jurisdictions outside of the states they sit. *See id.* at 560. Thus, even if the District of Nevada must engage in interpreting the laws of New Jersey, the Court does not believe that this warrants disturbing the forum selection clause entered into freely and voluntarily by the parties. Finally, "although courts may consider calendar congestion in ruling upon a § 1404(a) motion, relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003) (citing *Ayling v. Travelers Prop. Cas. Corp.*, No. 99–3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999)).

Based on the foregoing, the Court finds that the "substantial consideration" due the forum-selection clause must be followed. Indeed, the Court finds that the forum selection clause, viewed through the prism of the Section 1404 analysis, leads to only one result: transfer. Accordingly, the Court will transfer this case to the District of Nevada, Reno Division.

### III. CONCLUSION

For the foregoing reasons, the Court transfers this case to the United States District Court for the District of Nevada, Reno Division, pursuant to 28 U.S.C. § 1404(a). The Clerk shall not

transfer this case for fourteen (14) days. *See* L. Civ. R. 72. 1(c)(1)(C). An appropriate order will be filed with this Opinion.

  s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**